Connie S. **WEDEL, as Personal Representative of the Estate of Charles O. Beshear, deceased, Appellant–Plaintiff,**

v.

**AMERICAN ELECTRIC POWER SERVICE CORP. and OHIO VALLEY COAL CO., INC., Appellees–Defendants.**

No. 19A01–0410–CV–460.

Court of Appeals of Indiana.

April 10, 2006.

G. Daniel Kelley, Jr., Edward P. Steegmann, Ice Miller LLP, Indianapolis, for Appellees.

## OPINION ON REHEARING

BAILEY, Judge.

We issued our opinion in this appeal on December 30, 2005. In that opinion, we examined the propriety of the trial court's

grant of summary judgment to American Electric Power Service Corporation ("AEP"), with respect to four elections for advance royalties made by Charles Beshear on September 19, 1975, June 22, 1978, June 20, 1983, and September 14, 1983. These elections were made pursuant to the 1970 Agreement between Beshear and AEP, which establishes a procedure whereby Beshear, first, acquires and assigns certain options to AEP within ninety days of AEP's written notice expressing its intent to proceed with the contract. Upon the assignments, AEP has an additional three years to decide whether to exercise the options. Assuming AEP exercises the options, Beshear, then, has five years in which to elect advance royalties.

On appeal, the issue presented by the parties concerned the timeliness of the four elections under both the law of the case and the applicable statute of limitations. In our original opinion, we affirmed the trial court's grant of summary judgment to AEP with respect to the election made on September 19, 1975,[1] but reversed summary judgment on the remaining three elections. *See Wedel v. Am. Elect. Power Serv. Corp.*, 839 N.E.2d 1236, 1250 (Ind.Ct.App.2005) (*"Wedel III "*).

On January 30, 2006, AEP filed a Petition for Rehearing arguing that we had raised several issues *sua sponte*, in violation of its procedural due process rights. AEP contends, for example, that we *sua sponte:* (1) declined "to apply the law of the case established in *Wedel II* [*Wedel v. American Elec. Power Service Corp.*, 681 N.E.2d 1122 (Ind.Ct.App.1997) ] to enforce the 8 year, 90 day deadline in the parties' Agreement as against Beshear's June 22, 1978, June 20, 1983 and September 14, 1983 elections;"[2] (2) raised the rule against perpetuities issue; (3) rejected AEP's standing to raise the perpetuities issue; (4) found Beshear's life as a relevant life in being for purposes of the rule against perpetuities; and (5) overruled portions of *Wedel II* not raised by the parties. Appellee's Pet. Reh'g at 2.

However, our opinion did not raise or address any issue *sua sponte*. In the original appeal, for example, AEP requested that we apply the law-of-the-case doctrine to find the June 22, 1978, June 20, 1983, and September 14, 1983 elections untimely because they were not made within eight years and ninety days of the 1970 Agree-

---

1. AEP does not challenge our decision with regard to the September 19, 1975 election.

2. AEP also challenges our recitation of the standard regarding the law of the case doctrine. Appellee's Pet. Reh'g at 3, ¶ 4. In *Wedel III*, we observed:

   [T]he law of the case doctrine is only a discretionary rule of practice and, despite its availability, courts retain the power to revisit their prior decisions or those of a coordinate court in any circumstance. *See State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994), *reh'g denied*. Indeed, as the *Huffman* Court acknowledged, when faced with an apparent conflict between finality and fairness—i.e., the goals fostered by the law of the case—the courts should unhesitatingly choose the latter. *Id.*

   839 N.E.2d 1236, 1247 (Ind.Ct.App.2005). In its petition for rehearing, AEP takes issue

with our reference to *Huffman*, 643 N.E.2d at 901, because the present action is civil in nature and does not involve an intervening change in law. However, a careful reading of *Huffman* reveals that our Supreme Court borrowed the language at issue, ultimately, from *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In relevant part, *Christianson* held:

   A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work manifest injustice."

   *Id.*

ment. In its appellee's brief, AEP maintained:

> The linchpin to saving any of the overriding royalty in acquired acreage from the perpetuities rule was—the [*Wedel II*] holding that the 1970 Agreement established an 8 year 90 day deadline for advance royalty elections. Without this holding, the rule against perpetuities would have voided Beshear's advance royalties in acreage not then owned (in 1970) by Beshear or AEP (or we wouldn't be here), just as the rule voided "both Beshear's mined and advance royalty interests" in the unacquired acreage as of or after the deadline.

\* \* \*

> ... Before the trial court, Beshear contended that the election deadline was a traveling deadline—one that would travel with each new option acquired by AEP—such that Beshear would have a 5 year election period after each new option was acquired, even an option acquired in the year 3000.... Once again—because it was possible that AEP would not acquire options until past the perpetuities rule, an advance royalty election that had a traveling deadline of 5 years past any option acquisition date would not save anything.

Appellee's Br. at 20–21. In response to this argument, we, as a coordinate court to

*Wedel II*, declined to follow the law-of-the-case doctrine because, in our view, to do so would completely obliterate Paragraph 8 of the 1970 Agreement inasmuch as such paragraph allows the parties to continue to acquire options on additional acreage.[3] Instead, we determined that, "even if the rule against perpetuities applies to the 1970 Agreement, Beshear's right to royalty interests would necessarily occur within his lifetime, i.e., the life in being, and twenty-one years." *Wedel III*, 839 N.E.2d at 1248. The mere fact that we declined to follow the law of the case and hold as AEP had anticipated does not mean that we improperly raised issues *sua sponte*.[4]

In its petition for rehearing, AEP also challenges our "*sua sponte* raising and holding that the statute of limitations for Beshear's claim for unpaid advance royalties accrues upon exercise of options by AEP, rather than at the time when AEP refused to pay Beshear's advance royalty elections ...." Appellee's Pet. Reh'g at 5. Again, the statute of limitations issue was not raised *sua sponte*, but was squarely before this Court on appeal. Indeed, the parties argued, at great length, whether the six-year statute of limitations of Indiana Code Section 34–11–2–7 or the twenty-year statute of limitations of Indiana Code Section 34–11–2–11 applied to Beshear's overriding advance royalties.

---

**3.** If, for example, Beshear acquired, and assigned to AEP, options in 1972 pursuant to Paragraph 8 of the Agreement, AEP would have three years to decide whether to exercise those options. Assuming AEP exercised its options, Beshear would then have an additional five years in which to elect advance royalties. Thus, under the 1970 Agreement, an election in 1980 would be timely even though it is beyond the judicially imposed eight-year-and-ninety-day deadline from the 1970 Agreement, i.e., April of 1978.

**4.** It is important to observe that, in the original opinion, we did not determine that AEP lacked standing to challenge the 1970 Agreement as being void under the rule against perpetuities. Rather, we simply *questioned* whether it had standing in light of the fact that its interest in the options derived solely from the Agreement. We also noted that we were perplexed that AEP had relied upon the rule against perpetuities to void Beshear's royalty interests, i.e., the 1970 Agreement, because AEP's interest in the land or options, which derived from that same agreement, would likewise be void under such rule.

That said, the parties failed to clearly articulate their arguments or identify the proposed accrual date for purposes of the statute of limitations. Instead, Wedel asserted solely that the twenty-year statute of limitations governs the elections in question and, further, that Beshear had made his election within that statutory period. *See* Appellants' Br. at 10. By contrast, AEP maintained that the six-year statutory period applied such that "all elections made prior to August 1, 1990"[5] are time-barred. *See* Appellee's Br. at 19. Thus, in AEP's view—at least on direct appeal—the date on which the election was made began the accrual period for purposes of the statute of limitations.

However, on rehearing, AEP now contends that the statutory period with respect to Beshear's claim for unpaid royalties began to run when *AEP refused to pay* the claimed royalties. We do not disagree with this latter contention, but wish we were privy to this argument on direct appeal. *See* Louis D. Brandeis, *"The Living Law,"* 10 ILL. L. REV. 461, 470 (1916) ("A judge rarely performs his functions adequately unless the case before him is adequately presented."). In the original appeal, we interpreted the parties' statute of limitations contention as an additional claim that the elections were untimely. Apparently, or at least in AEP's view, such an interpretation was in error inasmuch as the timeliness of Beshear's elections were not at issue. Rather, the statute of limitations question concerned the timeliness of the complaint vis á vis AEP's refusal to honor the election. As a result,

on rehearing, we now address the argument advanced by AEP in the petition for rehearing.

In so doing, we first recognize that the parties have failed to designate any evidence demonstrating the date on which AEP refused to pay Beshear advance royalties for the June 22, 1978 election.[6] Rather, the designated evidence reveals that on June 20, 1983, Beshear "re-stat[ed] his demand for payment as set forth in the letter dated ... June 22, 1978." Supplemental App. at 10. The fact that AEP had not yet paid Beshear for the June 22, 1978 election on or before June 20, 1983 does not, in itself, prove that AEP had refused to pay those advance royalties. In light of this dearth of evidence, a grant of summary judgment in favor of AEP, with respect to the June 22, 1978 election and on the basis of the statute of limitations, would have been inappropriate.[7]

Nevertheless, even assuming that AEP had immediately refused to pay Beshear on the date of the June 22, 1978 election, the claim for royalties derived from that election is not time-barred, as a matter of law, because Beshear's complaint was filed within the applicable twenty-year statute of limitations period. On appeal and in its petition for rehearing, AEP argues that Indiana Code Section 34–11–2–7, which establishes a six-year statute of limitations period, governs the present action because the overriding advance royalties in dispute represented the use, rents, or profits of real property. The designated evidence, however, does not support this contention.

---

5. Because the complaint at issue was filed on August 1, 1986, we assume that AEP intended to write "August 1, 1980."

6. The complaint at issue was filed on August 1, 1986. Clearly, regardless of when AEP refused to pay, the June 20, 1983 and September 14, 1983 elections are not time-barred

under either the six- or twenty-year statute of limitations period.

7. Interestingly, the trial court did not grant summary judgment to AEP, with respect to the June 22, 1978 election, on the basis that the election was time-barred as a result of the six-year statute of limitations period.

Rather, the evidence demonstrates that the 1970 Agreement required Beshear to obtain options in certain real estate and to "assign"—not lease—those options to AEP in consideration for overriding advance royalties. Once Beshear assigned, and AEP exercised,[8] the options, he no longer maintained a right to such options, but instead, enjoyed a right to payment, i.e., the advance royalties. Stated differently, the overriding advance royalties represented payment for the sale—and not the use, rent, or profit—of the options. *Cf. Hendrickson v. Alcoa Fuels, Inc.*, 735 N.E.2d 804, 813 (Ind.Ct.App.2000) (holding that the six-year statute of limitations period of Indiana Code Section 34–11–2–7 applied where, pursuant to a written contract, the property owners *leased* certain coal properties in exchange for coal royalties, which were in the nature of rent); *and Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 262 (7th Cir.1998) (holding that royalty payments pursuant to a coal *lease* represent profits of real property under Indiana Code Section 34–11–2–7(2)). As such, the six-year statute of limitations established in Indiana Code Section 34–11–2–7 does not apply to the election at issue.

Rather, the twenty-year statutory period enunciated in Indiana Code Section 34–11–2–11 governs the present dispute. That statute provides, in relevant part: "an action upon contracts in writing other than those for the payment of money entered into before September 1, 1982, not including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, must be commenced within twenty (20) years after the cause of action accrues."[9] Because Beshear filed his complaint within twenty years of the June 22, 1978 election—assuming AEP immediately refused to pay the advance royalties at that time—his action is not time-barred. We grant AEP's petition for rehearing for the sole purpose of clarifying the statute of limitations issue and affirm our original opinion in all other respects.[10]

DARDEN, J., concurs.

SHARPNACK, J., concurs in result.

8. Pursuant to the 1970 Agreement, if, after Beshear assigned an option, AEP chose not to exercise that option, "AEP will re-assign to [Beshear] said options, if [he] so desire[s,]" provided he reimburses AEP for any amounts expended by AEP in connection with that particular coal reserve. *Wedel III*, 839 N.E.2d at 1239.

9. Indiana Code Section 34–11–2–11 also has a ten-year statutory period as follows: "An action upon contracts in writing other than those for the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record, and for the recovery of the possession of real estate, must be commenced within ten (10) years after the cause of action accrues." This ten-year period, however, is inapplicable to the present action.

10. On rehearing, AEP also contends that we erred by not "affirming the trial court's grant of summary judgment on the issues of fraud, fraudulent concealment, coal seam #3 not being minable, and Counts III and IV for unjust enrichment and tortious breach." Appellee's Pet. Reh'g at 5–6. However, those issues were not before this Court. Indeed, in its appellee's brief, AEP recognizes that Beshear does not challenge those determinations. *See* Appellee's Br. at 12–13.

We remind AEP that, procedurally, our original opinion addressed the propriety of the trial court's grant of summary judgment in favor of AEP on the issues of the law of the case and the applicable statute of limitations. Our opinion did not grant judgment to either party, but rather, merely held that summary judgment on the two issues before us was inappropriate.